JAMES CUSHING & al. versus NATHAN LONGFELLOW.

Where the question to be decided is the validity of a sale of non-resident, unimproved lands in an unincorporated place, to pay the taxes assessed thereon by the County Commissioners, to be expended in making a road, whether the doings of the County Commissioners having jurisdiction of the subject matter, can be impeached collaterally, or must be considered as correct until reversed by *certiorari*, respecting which no opinion is given, the doings of the county treasurer in making the sale may be examined. And parol testimony is admissible to affect them.

The county treasurer, in making such sale, is bound to a strict performance of his duties.

The giving credit for the purchase money by the county treasurer, at such sale, renders it invalid against the original proprietor.

In an action of trespass for mill logs, cut upon land of the plaintiff and removed to a distance therefrom, the true rule in the assessment of damages is, that the plaintiff should recover the value of the logs, as it was the moment after they were severed from the freehold.

THE action was trespass for taking, carrying away and converting the plaintiff's mill logs.

It appears from the report of the trial before TENNEY J. that the parties introduced deeds, powers of attorney, assignments, depositions, agreements, admissions and witnesses. The papers were, with a single exception, to be referred to, and not copied. Copies of them, or an abstract of the facts proved, cannot be given by the Reporter. There is, however, no difficulty in obtaining all the facts, necessary to understand the points decided, from the opinion of the Court, and also the ruling of the Judge presiding at the trial.

*Kent* and *Washburn* argued for the plaintiffs — and

*Hobbs*, for the defendant.

One of the objections made, in behalf of the plaintiffs, to the validity of the tax title, was, that the giving of credit by the county treasurer rendered the sale illegal. In their argument on this point they cited st. 1821, c. 118, § 24; Story's Ag. 96; 13 Mass. R. 260; 5 Mason, 425; 9 Johns. R. 263; 1 Cowen, 46; 4 Cowen, 553; 14 Sergt. & R. 434; 2 Pick. 258.

On the point, that the instructions as to the measure of

damages were correct, they cited *Higginson* v. *York*, 5 Mass. R. 341; *Bucknam* v. *Nash*, 3 Fairf. 474; *Hill* v. *Penny*, 17 Maine R. 409.

For the defendant, it was said, on these points, that when the sale was made, the treasurer became immediately liable for the amount. The tax is paid by the sale of the land; and in what manner payment is made, or when, the treasurer and his sureties become immediately liable to pay the money upon the sale. Whether the payment is made in gold or silver, bank bills, notes payable on demand or on time, is a matter between the treasurer and the purchasér. Will a sale be void, if the treasurer receives payment in bank bills? And yet a good note, payable on time, may be better than many bank bills.

He contended, however, that this question was not properly before the Court, as parol evidence could not be admitted to contradict the admission of payment in the deed.

It was also insisted, that the Judge erred in declining to give the requested instruction. *Morgan* v. *Powell*, 3 Ad. & Ellis, N. S. 278; *Wood* v. *Morehouse*, Ib. 440.

The opinion of the Court was prepared by

WHITMAN C. J. — From the report of the Judge, who presided at the trial, we learn that the action is trespass *de bonis asportatis*; that the articles alleged to have been taken and carried away were certain logs, cut on a certain tract of land, containing four thousand acres, situate in the southwest corner of township No. nine, in the county of Aroostook; that the plaintiffs made out a *prima facie* case by showing themselves to be the mortgagees of the tract; and that the logs were cut thereon by the defendant; that thereupon they insisted on recovering, as damages, the estimated value of the logs, at a certain landing place, to which they had been hauled by the defendant; and the Court so ruled, and instructed the jury accordingly. But the defendant insisted that the damages should be estimated according to the value of the timber when standing; and the jury were allowed to ascertain what such value actually was, with a view to the correction of the verdict in

case the whole Court should be of opinion, that such was the true rule for estimating damages. The jury, however, returned their verdict in accordance with the instruction of the presiding Judge. And judgment is to be entered upon this verdict unless the whole Court should be of opinion that the damages were incorrectly assessed. And, in such case, if the rule for the purpose should be found to be as contended for by the defendant, the verdict is to be corrected, as before intimated. If, however, the title to the whole township, as set up on the part of the defendant, should be found to be in him, the verdict is to be set aside, and a nonsuit entered.

The title thus set up in defence must first be considered. It is supposed to depend upon the validity of the laying out of the Baring and Houlton road ; and the assessment upon the said township for the purpose of opening and making the road passable ; and upon the sale and conveyance to the defendant of the whole township, consequent upon the non-payment, by the proprietors thereof, of the sum so assessed.

A variety of objections were in the first place urged against the proceedings in laying out the road, which we have not been inclined to regard as of much force, but which we have not deemed it necessary to examine with a view to a definite decision in regard to them, as there might be an impropriety in our revising the doings of the Court of County Commissioners, thus incidentally presented ; and as we shall find the defendant's title principally objectionable upon other grounds.

The petition for an assessment to open and make the road, and the notice ordered thereon, sets forth, that a road was laid out in 1832; whereas the Baring and Houlton road was laid out in 1833. The proprietors of the township, therefore, could not have been duly apprised, by the notice given, that it was in contemplation to lay an assessment upon the township for the purpose of opening and making the road in question.

And, moreover, the year allowed for the making of the road by the proprietors, had not expired, when the petition was preferred. The road was laid out at March term, 1833 ; and the petition for the assessment was entered at September term, of

Cushing *v.* Longfellow.

the same year. The Court, in ordering notice upon it, were probably led into an error by the statement in the petition, that the road was laid out in 1832, and may have made the order for the assessment upon the same supposition. The Court, however, had jurisdiction of the subject matter; and though they may have erroneously adjudged, in consequence of their misapprehension of a fact, the notice having been given as provided by statute, and the plaintiffs thereby having been made constructively privy, and therefore, in a manner, parties to the proceeding, it may be improper for us, upon an incidental examination, to treat the proceeding as a nullity; and, thereupon, to adjudge the sale to the defendant for that reason to be void.

But the county treasurer, who made the sale to the defendant, was a ministerial officer. His acts may be examined. Parol testimony is admissible to affect them. He was bound to a strict performance of his duties. The proprietors of the township, as well as the public, were interested in his doings. His acts should have been no otherwise in reference to the one than to the other. It appears that in making the sale he stipulated to give to the purchaser a credit of something like two, four and six months, for the purchase money. This he was not authorized by law to do. He should have sold for cash down. Public agents, authorized to make sales, in the absence of any express authority to the contrary, can do no otherwise. Those who deal with them are bound to take notice, that such is the case, and become privy to the erroneous proceeding. If one deals with a private agent, even, who has not an express or implied authority to sell on credit, the title, to any article purchased of such agent, will not vest in the vendee, against the principal of the agent. Public agents can seldom, if ever, derive authority from implication. The plaintiffs were interested, in this instance, in having the sale made for cash. They had a right of redemption. The sale on credit might well be believed to enhance the price; so that they might, if the sale could be upheld, be compelled to pay a much greater sum for redemption than would otherwise be requisite for the purpose.

They might, besides, be under the necessity, in order to a redemption, to pay the amount to one, who had in fact paid nothing for the land; and who might subsequently fail to make payment for it; and so the land be subject to a re-sale, in order to obtain funds to open and construct the road. We think a sale made, as the one in question was, could not be valid against the original proprietors. The plaintiffs therefore were entitled to damages.

But we are not satisfied, that the principle for assessing them, on the one side or on the other, as contended for by each, was correct. The true rule, we apprehend to be, that the plaintiffs should recover the value of the logs, as it was the moment after they were severed from the freehold. They then became a chattel, so that trespass *de bonis* would lie for them. This value would, perhaps, be somewhat greater than what, among lumbermen, has obtained the name of stumpage, viz. the value of trees standing

The plaintiffs, in their action of trespass, have not a right to select any other place, than that where the injury was originally done, to enhance the value of the articles taken, although they might have been greatly enhanced in value by a removal to such other place. It is true they might have seized them wherever they could find them; and might have demanded them, at another place, of one having them there, and in an action of trover have recovered the value of them there. *Baker* v. *Wheeler*, 8 Wend. 505, and cases there cited. But in trespass the rule is believed to be different. In *Morgan* v. *Powell*, 3 Adol. & Ellis, N. S. 278, it is laid down, that the value of the property severed from the freehold is that, which it has immediately after being severed. That was an action of trespass *de bonis* for coal severed from a mass in the pit, and raised to the pit's mouth, in readiness for sale. The plaintiff in that case insisted on being allowed to recover the value, as it was when raised to the pit's mouth, and the judge at *nisi prius* so ruled; but the whole Court reversed the decision, and ruled as above. And the rule was said to be the same in the Exchequer. *Martin* v. *Porter*, 5 M. & W. 351. In *Wood*

*v. Morewood*, it was said to have been held by Park, Baron, in an action of trover for coals so taken, if the defendant took them without being conscious that he was doing wrong, they might be estimated as if they were to be sold by the plaintiff unsevered ; if otherwise, then at the price they would be worth when first severed. 3 Adol. & Ellis, N. S. 440, in a note. The jury returned the former and the decision was acquiesced in. This seems in conflict with the decisions in N. York ; but shows the leaning of the mind, of a very distinguished jurist, towards the equity of not allowing exemplary damages to be recovered against one, not conscious of doing wrong, when he took the goods of another. And the defendant, in the case at bar, may well be believed to have been in this predicament.

Our opinion, not being exactly in conformity to either of the estimates of the jury, a new trial must be granted.