## SIMS v. GLAZENER.

1. Evidence pertinent to the issue, cannot be rejected by the court; it must be left to the jury to determine its bearing.
2. It is not permissible, in an action of trespass for taking corn, for the plaintiff to prove, for the purpose of enhancing the damages, that in consequence of the trespass, he was compelled to work as a day laborer to procure other corn.
3. A tenant who sets up no title, cannot dispute the title of his landlord.
4. The right of one to corn in a crib, is not divested, or impaired, by another person mixing his corn with it.

Error to the Circuit Court of Talladega. Before the Hon. G. W. Stone.

TRESPASS *vi et armis*, by the plaintiff in error, for the taking, and carrying away, by the defendant, of one hundred bushels of corn.

Upon the trial, as appears from the bill of exceptions, the plaintiff proved, that in the year 1846, he cultivated a tract of land in Talladega county, and made thereon a crop of corn, which he gathered in the fall, and deposited it, two-thirds in a crib, and one-third in a pen. That about one hundred bushels were thus deposited, the corn in the crib being intended for the plaintiff, and that in the pen for the defendant, but defendant knew nothing of the division. That in January, 1847, the defendant caused some ten bushels of the corn in the crib, to be taken to his own house, a few days after plaintiff had removed from the place to a farm in the neighborhood, and a third person had moved on the land as de-

fendant's tenant. That a short time before defendant took this corn off, he had sold ten bushels of corn to a neighbor, who got it out of the pen. That plaintiff was a young man, with a small family, and had no other corn than that above mentioned.

The defendant offered to prove, that he rented to plaintiff the said tract of land, and was to receive one-third of the corn made, for the rent. Also, that the plaintiff, after going on the tract, rented some of the land to one Bolton, who, in the fall of 1846, put thirty bushels of corn in said crib, to pay his rent for the part cultivated by him. The plaintiff objected to this testimony, but it was admitted, and he excepted. There was a conflict of proof as to whether the corn thus put into the crib by Bolton was in payment of the rent to plaintiff, or defendant.

The plaintiff offered to prove, that soon after the corn was thus taken by defendant, the plaintiff worked by the day at several places in the county, and took corn in payment for his labor; and that soon after the taking of the corn by the defendant, the plaintiff abandoned the place where he was living. This testimony, on the plaintiffs motion, the court excluded, and the defendant excepted.

The plaintiff also offered to prove, that the land on which the corn was raised, was part of a 16th section—that it was in possession of one Gaines, in 1845—and that the defendant had no title to the land. This on motion of defendant was rejected, and plaintiff excepted.

The court charged the jury, that if, by the contract between plaintiff and Bolton, Bolton was to pay defendant the rent for the part of the land cultivated by Bolton, and if Bolton did put thirty bushels of corn in plaintiff's crib, as payment of the rent to defendant, and for defendant, and if afterwards plaintiff put corn of his own into the crib, thus mixing his own with it, then the defendant had the right to take as much as his own thus put there as Bolton's out of the crib, whether plaintiff was willing or not; and if the defendant did not take any more, the plaintiff could not recover.

To this charge the plaintiff excepted. The matters of

law arising out of the bill of exceptions, are assigned as error.

S. F. RICE and J. T. MORGAN, for plaintiff in error.

1. It being shown that Sims was a very poor man, and had no other corn than that taken by Glazener; and that he had a family to support; that the corn was taken in the early part of the year—the court should have allowed the plaintiff to prove that he worked as a day laborer to procure corn for the support of his family; and that he had to abandon the place he then lived upon; for such are the direct and necessary consequences to a man so situated, of the wrongful acts of Glazener. Phares & Herndon v. Stewart, 9 Por. 336; 4 Shep. 171; 2 Greenl. Ev. Trespass; Martin v. Everett, 11 Ala. 375.

2. The evidence offered by Sims, as to the title of the lands was important, to show whether or not there had been a lease from Glazener to him.

3. The placing fifteen bushels of corn by Bolton in the crib of Sims, without the knowledge of Glazener, did not constitute Glazener the general owner; neither did it constitute Sims a bailee, for it was done without his consent or knowledge; and Sims, by appropriating the corn in the manner he did, had a sufficient property to maintain the action against Glazener, who had neither the general property, nor the possession. See Thompson v. Spinks, 12 Ala. 155.

L. E. PARSONS, for the defendant in error.

COLLIER, C. J.—1. It was certainly competent for the defendant to show that the plaintiff was his lessee, and that the latter made Bolton a sub-lessee, under a contract to pay the rent for the land he cultivated to the defendant—also, that Bolton, in pursuance of his contract, deposited the corn in which the rent was to be paid, in a crib situated on the premises, which the plaintiff used for his own purposes. Whether this evidence was sufficient to establish the defendant's right to enter the crib, and remove the corn without first obtaining the permission of the plaintiff, was an inquiry

addressed to the jury; but it was at least pertinent to the issue. If the assent of the plaintiff to the deposit by Bolton, could be inferred from the circumstances, and the rent was payable by the latter to the defendant, it is difficult to conceive of a legal objection to the removal of his corn, by the defendant; especially as the plaintiff's tenancy had ceased, and he had removed from the premises.

2. It was the province of the jury to decide, whether Bolton was to pay the rent to the plaintiff or defendant—the court could not assume as a postulate, which of them were entitled to receive it, and testimony should not be adjudged inadmissible, because it was founded upon the one hypothesis, or the other.

3. As a general proposition, it may be conceded that a wrongdoer is responsible for the consequences which *immediately* flow from his wrongful or negligent acts. But this principle will not allow of such an extraordinary tension, as to permit the plaintiff in the case at bar to show, that in consequence of the alledged trespass he was obliged to work as a day-laborer to obtain the means to purchase more corn. Such testimony tends to establish a criterion of damages too remote, and disconnected with the act done, and supposes the rule to fluctuate according to the poverty of the plaintiff. A supposition of this kind is opposed to reason, and is not demanded, either by moral or legal justice. Whatever be the condition of a party aggrieved by the wrongful seizure and conversion of his property, he is entitled to have his loss repaired by an amounnt of damages sufficient to *replace* what has been taken from him, and if the act was committed without pretence of right, or from a reckless, or wicked disposition, the jury should give him vindictive damages. See Donnell v. Jones, *supra*.

4. The fact that the land leased by the defendant was part of a sixteenth section—was occupied the preceding year by a third person, and that the title thereto was not in the defendant, does not disprove the authority of the latter to make the lease. But if it were a disputable question, it may be asked if it is competent for a tenant who sets up no title, to dispute his landlord's title? See Randolph v. Carlton, 8

Ala. Rep. 606. The admission of the testimony was rightfully denied.

5. In respect to the charge, it refers to the jury the solution of the facts; asserts that if, by the contract, between the plaintiff and Bolton, the latter was to pay the rent to the defendant, for the land he cultivated, if he placed thirty bushels of corn in the plaintiff's crib, in payment of the rent to the defendant, if the plaintiff afterwards deposited his own corn in the same crib, thus mixing it with the defendant's, then the latter had a right to remove from the crib as much corn as Bolton put there for him, without obtaining the consent of the plaintiff; and if he did not take more, the plaintiff was not entitled to recover. By the terms of the plaintiff's lease, he was to cultivate at least fifteen acres of the land, and more if he chose to do so—paying as rent, one third of the corn grown on the premises. This contract did not contemplate that the plaintiff should become a lessor of any part of the land he was authorized to cultivate, yet if he exercised such a power, and stipulated with his lessee to pay the rent to the defendant, and the latter actually set it apart, and deposited it in the plaintiff's crib, (without objection,) while it was empty, the corn thus delivered by Bolton, became the property of the defendant, and if the plaintiff placed his own in the same crib, the right of the defendant was not thereby divested, or impaired. The appropriation of one third of the corn gathered by Bolton to the payment of the rent, was merely carrying out the contract between the plaintiff and the defendant; it was merely doing that which the plaintiff himself was bound to do; and being done by a third person, under his direction, the same consequences result to the defendant as if the rent for all the land cultivated had been paid, or set apart from the plaintiff's own crop. The case of Thompson v. Spinks, 12 Ala. Rep. 155, bears a very remote analogy to the present, and is not opposed to any thing we have said.

There is no error in the ruling of the circuit court, and its judgment is consequently afirmed.