MADDOX, Justice
(dissenting).
Is a corporate taxpayer, which uses pulpwood chips in its manufacturing process a “manufacturer” as defined in the Alabama Forest Products Privilege and Severance Tax Act, as amended [Code 1975, § 9-13-80, et seq.] and, therefore, liable for collecting the severance tax from its suppliers of pulpwood chips and for paying the processor’s privilege tax imposed by law?
The facts are uncontroverted. In fact, the case was submitted to the trial court on a Stipulation of Facts and Exhibits. Briefly, they are as follows: International Minerals & Chemical Corporation purchased wood chips for its Bridgeport, Alabama operation from various suppliers located in Alabama. The wood chips were used by International Minerals primarily as a contributor of carbon in the raw material charge to produce a complete reaction of silica to silicon in the process. The wood chips were also added to the raw material charge as a conditioner to maintain the desired permeability of the reacting mass.
The Court of Civil Appeals, in pertinent parts of its opinion, held:
“We conclude, as did the trial court, that the Company is a manufacturer of ferrosilicon, which is an alloy resulting from the reaction of silica and iron. The Company is not a processor or manufacturer of wood chips within the meaning of §§ 9-13-82(b) and 9-13-86, Code of Alabama 1975, because the Company buys its wood chips from several Alabama suppliers. In other words, the wood logs have been processed into wood chips by someone else, and the Company just buys them for its own manufacturing process.”
* * * * * *
“The expected result of the manufacturing process engaged in by the Company is the alloy ferrosilicon, not a finished forest product; whereas the word' ‘manufacturer’ as defined by § 9-13-80(8) envisions a person engaged in processing or manufacturing forest products into a finished forest product." (Emphasis supplied.)
*63 From the language used in the above-quoted portion of the decision, it is clear that the Court of Civil Appeals considered that the taxpayer who turned the wood logs into wood chips was the “processor” or the “manufacturer,” and that the State of Alabama should seek to collect the tax from that taxpayer.
It is also .clear that the Court of Civil Appeals, by holding that the word “manufacturer” as defined in § 9-13-80(8) envisions a person engaged in processing or manufacturing forest products into a finished forest product, limited the definition of a “manufacturer” to that taxpayer who processes or manufactures forest products into finished forest products.
This holding is erroneous and is in conflict with prior decisions of this Court.
This is not the first case in which the question of the taxation of “pulpwood chips” has arisen. In the first case, State v. International Paper Co., 276 Ala. 448, 163 So.2d 607 (1964), this Court decided that the term “pulpwood” did not include “pulpwood chips” which were processed from the residue of logs used in making lumber. The legislature responded to the Internationai decision by amending the taxing statute to specifically include “pulpwood chips” in the taxing scheme.
. The next case reaching this Court was International Paper Co. v. Rabren, 285 Ala. 383, 232 So.2d 627 (1970). In that ease, the paper mill argued that:
“It is the contention of counsel for the appellant paper mill that because the original Forest Products Severance Tax Act, defines only pulpwood as being a forest product, and does not mention ‘pulpwood chips,’ and the section was not changed by the 1967 amendment by adding ‘pulpwood chips’ as a forest product, the paper mill cannot be deemed a ‘manufacturer’ of pulpwood because of its handling of pulpwood chips, and therefore it is under no duty to' collect, report, and pay over any tax relating to pulpwood chips.”
This Court rejected the paper mill’s argument and reached the following decision:
“We think it clear from the full terms of the amendment the legislature, in fixing a measure for the taxation of pulpwood chips, intended that ‘pulpwood’ would apply to the now recognized two forms of pulpwood, i.e., small round logs, and pulpwood chips. This being so, no need arose for the legislature to amend the original Act defining pulpwood as a forest product, nor the further provision in the original Act that, as applied to pulpwood, the paper mill is deemed the manufacturer thereof.”
In Colston v. Gulf States Paper Corporation, 291 Ala. 423, 282 So.2d 251 (1973), this Court held that a corporate paper producer was required to collect the tax from its suppliers of pulpwood chips.
In this case, International Minerals & Chemical Corporation argues that it is not a “manufacturer,” and contends “that the decisions of International Paper Company and Gulf States Paper Corporation both recognize the legislative intent to impose a forest products severance tax only upon corporate paper producers which use large quantities of lumber related products in the manufacturing and processing of paper,” and that “ . . . the term ‘manufacturer’ should only include those who process or manufacture woodchips or other forest products into a product which primarily consists of lumber related elements.”
In determining the taxpayer’s liability, this Court construes two separate taxing statutes. One levies a forest products severance tax (Code 1975, § 9-13-81) “. upon every person engaging or continuing to engage in the state in the business of severing timber or any other forest products from the soil for sale, profit or commercial use whether as owner, lessee, concessionaire or contractor.” The “manufacturer” of forest products is responsible for paying to the State Department of Revenue the forest products severance taxes imposed. Code 1975, § 9-13-86. The other statute levies a processor’s privilege tax upon- the “. . . processor of the forest products or the manufacturer using the for *64 est products in an amount equal to 50 percent of the tax on the severer as set out above.” Code 1975, § 9-13-82(b).
As pointed out above, the taxpayer here claims that it is not a “manufacturer” as that term is defined in the taxing statutes.
A manufacturer is defined in Code 1975, § 9-13-80(8) as:
“MANUFACTURER. As applied to forest products suitable for manufacture into lumber, the person who operates the sawmill or plant in which such products are so manufactured into lumber; as applied to pulpwood, chemical wood and bolts, the person who operates the paper mill, chemical plant or other plant in which such forest products are processed. . .."
(Emphasis added.)
I have carefully reviewed the arguments of the State and of the taxpayer and I conclude that the opinion of the Court of Civil Appeals fails to follow the decision of this Court in International Paper Company v. Rabren, 285 Ala. 383, 232 So.2d 627 (1970). The only distinction in this case and the International Paper Company v. Rabren case is that in International Paper Company v. Rabren, the “manufacturer” was a paper mill whereas in this case, the “manufacturer” is a chemical plant. That is a distinction without a difference. In fact, the definition of “manufacturer” as stated in Code 1975, § 9-13-80(8) specifically includes a “chemical plant or other plant in which such forest products are processed . . . .” (Emphasis added.)
I think that the definition of “forest products” includes pulpwood chips, that the taxpayer here is a “manufacturer,” and that the word “processed,” as used in the definition of a “manufacturer,” applies to any taxpayer who uses forest products in the manufacturing of a finished product.
I would reverse the judgment of the Court of Civil Appeals.